UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JUSTIN BERRIOS

                  -Plaintiff,                              Civ._____(ECF)

      -against-                            COMPLAINT & JURY DEMAND

COLLINS BUILDING SERVICES, INC.

                  -Defendant.
---------------------------------------------------------------X

       Plaintiff Justin Berrios, by his attorneys Brooklyn Legal Services, alleges as follows:

## PRELIMINARY STATEMENT

1.       This is an action for gender discrimination pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991; the New York State Human Rights Law ("NYS HRL"), N.Y. Exec. Law §§ 296 *et seq.*; and the New York City Human Rights Law ("NYC HRL"), N.Y. Admin. Code §§ 8-107 *et seq.*

2.       Plaintiff Justin Berrios ("Mr. Berrios" or "Plaintiff") is a transgender man who began working as a custodian at the downtown Brooklyn Verizon facility as an employee of Collins Building Services, Inc. ("Defendant") on or about April 1, 2015, when Defendant assumed the contract for cleaning the facility from Global Industries.

3.       Mr. Berrios had worked for Global Industries in the same job title and location for since approximately November 2011.

4.       Mr. Berrios, along with many of the cleaning staff employed by Global Industries, were retained as employees by Defendant when Defendant took over the cleaning contract.

5.       Mr. Berrios's co-workers from Global Industries were aware that he is transgender and had engaged in discriminatory behavior against him.

6.      When Defendant assumed the contract at the Verizon building, Mr. Berrios hoped that Defendant's management would put an end to the discrimination and stop the harassment. Instead, the discriminatory treatment against Mr. Berrios only escalated.

7.      On April 1, 2015, the very first day that Mr. Berrios met with Defendant's management-level employees, David Cobos and David Martinez, he informed them of the harassment and abuse.

8.      When Mr. Berrios informed Mr. Cobos and Mr. Martinez that his co-workers had prevented him from using the men's *or* women's bathroom, Mr. Cobos responded that it was understandable that his co-workers would feel uncomfortable with him in either bathroom.

9.      Mr. Berrios informed Mr. Cobos and Mr. Martinez that his co-workers regularly called discriminatory and derogatory names, referred to him by female pronouns, and called him by his dead name.

10.     Defendant's agents told Mr. Berrios that it would be "handled," but later that *same* day, Mr. Cobos told Mr. Berrios, "You should shave your beard. It looks disgusting."

11.     Shortly thereafter, Mr. Cobos attempted to give Mr. Berrios the company's uniform for women. When Mr. Berrios requested a man's uniform, Mr. Cobos gave him one that was clownishly large, subjecting him to additional ridicule by his co-workers.

12.     Mr. Berrios was unable to informally exchange shifts with his co-workers because they were hostile and uncooperative with him.

13.     When Mr. Berrios sought extra hours and shifts, he was sent in circles between his co-worker in charge of scheduling and Mr. Cobos.

14.     In May 2015, Mr. Berrios informed Mr. Cobos that he believed that he was being skipped over for extra hours because his co-workers disliked him because he is transgender. Mr. Cobos responded as if he didn't know what Mr. Berrios was talking about.

15.     When Defendant assumed the cleaning contract, Mr. Berrios went from second in seniority to the bottom.

16.     Mr. Berrios did not receive extra hours and was held to different standards than other employees.

17.     To his knowledge, Mr. Berrios was the only employee required to call the corporate office to notify them if he was going to be absent.

18.     Mr. Berrios was told that it was mandatory for employees to have on their uniforms when they clocked in and while they were on duty, but other employees regularly disregarded these rules without apparent consequence.

19.     Mr. Berrios's co-workers continued to regularly make derogatory and discriminatory comments based on his gender, to call him by his dead name, and to refer to him as "she" and "her."

20.     Mr. Berrios was never provided with a place to safely use the bathroom. He urinated in a bucket in the women's lounge and went to Starbucks to have a bowel movement.

21.     Mr. Berrios complained regularly to Mr. Cobos about discriminatory behavior by his co-workers and his problems getting extra hours, until Mr. Cobos told Mr. Berrios to stop calling him and stopped answering Mr. Berrios's calls.

22.     Further aggravating the abusive and hostile work environment, co-workers informed other workers and people in the building that Mr. Berrios was transgender, leading to additional discriminatory treatment while he was at work by, for example, the security guards.

23.     In May, 2015, Mr. Berrios filed a complaint with the EEOC.

24.     Defendant subsequently issued three disciplinary reports to Mr. Berrios between June and August.

25.     In a meeting on August 10, 2015, Mr. Martinez blamed Mr. Berrios for creating the dysfunctional workplace, told Mr. Berrios to be more respectful to his co-workers, and accused him of having "violent tendencies."

26.     On August 12, 2015, Mr. Berrios overheard Mr. Cobos tell a colleague, referring to Mr. Berrios, "I told you that bitch is really a prick."

27.     The harassment and abuse culminated on August 21, 2015, when Mr. Berrios was physically assaulted by five men in the men's bathroom, who shouted things such as "There's a reason that I'm a man and you're not!" and "Fucking tranny!" Mr. Berrios believed that one of his co-workers may have disclosed where he was working at that time. The attackers severely injured Mr. Berrios's ankle and hit him on the head.

28.     Mr. Berrios began receiving Workers' Compensation, concluding his employment by Defendant.

29.     As a result of Respondents' actions, Mr. Berrios suffered and continues to suffer ongoing harm and indignities, including but not limited to economic loss and emotional harm.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction of this action pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over the related state and municipal law claims pursuant to 28 U.S.C. § 1367(a), as these claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law and municipal law claims share all common operative facts with his federal law claims, and the

parties are identical. Resolving Plaintiff's federal, state, and municipal claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) (3), because the illegal conduct occurred in New York State.

## PARTIES

32.     Justin Berrios ("Mr. Berrios" or "Plaintiff") resides at 307 Knickerbocker Ave, 3R, Brooklyn, NY 11237. Mr. Berrios is a transgender man who has presented as a man since high school. He was employed by Defendant as a custodian beginning in or around April, 2015. Mr. Berrios last worked on-site for Defendant on August 21, 2015, and subsequently received Workers' Compensation benefits. He did not return to Defendant's employment.

33.     Collins Building Services, Inc. ("Defendant"), is a foreign business corporation doing business in New York State and is headquartered at 24-01 44th Road, 15th Floor, Long Island City NY 11101.

34.     Collins Buildings Services, Inc., employs over 500 employees.

## EXHAUSTION OF REMEDIES

35.     Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC). On May 6, 2021, the EEOC issued Plaintiff's Notice of Right to Sue.

36.     Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## FACTS

Discrimination by past employer made Plaintiff particularly susceptible to harm.

37.    On about November 2011, Mr. Berrios began working for Global Industries, a cleaning services company that contracts janitorial services with other companies. He worked as a custodian at the Verizon facility located at 395 Flatbush Avenue Extension in Brooklyn, New York.

38.    Global Industries provided cleaning services at the Verizon facility until about March 2015, at which time Collins Building Services ("Defendant") assumed the contract.

39.    Mr. Berrios continued to work in his same job title in the same location, only now as an employee of Defendant. Upon information and belief, when Defendant took over the cleaning contract on or about April 1, 2015, many, if not all, members of the existing cleaning crew were retained.

40.    Since he began working at Global Industries in 2011, Mr. Berrios presented as a man. For many reasons, including the fact that he legally changed his name to Justin while working for Global Industries, and management refused to timely issue a new identification card or consistently address him as Justin, his co-workers knew that he is transgender.

41.    Mr. Berrios was harassed by his co-workers, who consistently and publicly mis-gendered him and called him by his dead name, even though he regularly and directly asked them to use male pronouns and to call him Justin.  His co-workers regularly called him homophobic, anti-transgender, demeaning names.

42.    When Defendant assumed the contract at the Verizon building, Mr. Berrios hoped that Defendant's management would put an end to the discrimination and stop the harassment.

43.    Instead, when Defendant became his employer, the discriminatory treatment against Mr. Berrios escalated.

44.     During the time of the management transition, upon information and belief, Defendant called two meetings to which Mr. Berrios was not invited, although all of his co-workers were informed of the meeting and attended.

45.     On April 1, 2015, Mr. Berrios was informed of and attended a third meeting led by David Cobos, Defendant's Area Manager, and David Martinez, Defendant's Director of Human Resources. Both Mr. Cobos and Mr. Martinez were in supervisory, non-union positions, and, upon information and belief, acting as agents of Defendant.

46.     When Mr. Berrios approached Mr. Cobos and Mr. Martinez at the April 1, 2015, meeting, the looks on their faces and the way that they received him made Mr. Berrios believe that they both had been told that Mr. Berrios is transgender and they had preconceived ideas about him.

47.     At that meeting, Mr. Berrios's co-worker, Donald Smith, said something to the effect that it was important to keep him working with Khamali Easom "because men can help out men with men's work, and only Khamali and I are men."  Mr. Cobos nodded in agreement with this statement. Mr. Cobos did not acknowledge that another man, Mr. Berrios, was also standing right there. Mr. Berrios felt that this statement was made only to call attention to his gender.

48.     When Mr. Berrios attempted to ask questions about the new company's policies, he was interrupted and ignored. Mr. Berrios felt disrespected, frustrated, and invisible, and believed that he was treated differently because he does not conform to gender stereotypes.

 Plaintiff immediately reported the gender-based discrimination and harassment to Defendant.

49.     Immediately following the meeting, once other staff had left the room, Mr. Berrios informed Mr. Cobos and Mr. Martinez about the harassment he regularly received from his co-workers, including Mr. Easom, Mr. Smith, Natasha Crandel, and another woman named

Renee. Mr. Berrios told management in order to get help ending the abusive and discriminatory treatment by his co-workers.

50.     Mr. Berrios told Mr. Cobos and Mr. Martinez that his co-workers had repeatedly told him that he should not use the men's *or* women's bathroom, which made him feel unsafe using either.

51.     When he entered either bathroom, Mr. Berrios' co-workers snickered and muttered transphobic epithets under their breath. Mr. Berrios told Mr. Cobos and Mr. Martinez that he had overheard co-workers say things such as, "That thing shouldn't be in here, it doesn't have a dick," when Mr. Berrios entered the men's bathroom.

52.     Mr. Berrios was so intimidated that he urinated in a bucket in the women's locker room and went to Starbucks if he needed to have a bowel movement.

53.     Far from offering to intervene or address Mr. Berrios's need to have an accessible bathroom, Mr. Cobos stated that it was understandable that his co-workers would feel uncomfortable with him in either bathroom.

54.     Mr. Berrios told Mr. Cobos and Mr. Martinez that he regularly overheard co-workers referring to him as "faggot," "wannabe,"  "little engine that could,"  "tranny,"  "science experiment,"  "mariposa," and "maricona."

55.     Mr. Berrios told Mr. Cobos and Mr. Martinez that he wanted his checks hand-delivered by someone in management because he was fearful of any of his co-workers finding out his address and harassing him at home.

56.     Mr. Berrios told Mr. Cobos and Mr. Martinez that he wanted their help to end the severe and pervasive discriminatory, threatening, and harassing behavior. Mr. Martinez told him

that he should "relax."  He told Mr. Berrios that it would be "handled" and that he "should not worry."

57.    During this same conversation, Mr. Cobos at one point referred to Mr. Berrios as "she."

<u>Defendant openly discriminated against Plaintiff.</u>

58.    Later that *same* day, as he was describing Mr. Berrios's new job duties, Mr. Cobos told Mr. Berrios, "You should shave your beard. It looks disgusting."  Both Mr. Easom and Mr. Smith also had beards and, upon information and belief, Mr. Cobos did not ask them to shave.

59.    Within the next few days, Mr. Berrios approached Mr. Cobos to get the new company uniform. Mr. Cobos gave Mr. Berrios the uniform for women. Defendant assigns uniforms by gender and they are distinctly different. Mr. Cobos handed Mr. Berrios an all-white women's uniform. The men's uniform is a button-down shirt and pants in green and white.

60.    When Mr. Berrios refused to take the woman's uniform, Mr. Cobos mockingly asked "why not"? Mr. Berrios replied that he is a man and doesn't wear women's clothes. Mr. Cobos gave him men's pants with a 40-inch waist and 34-inch length, along with an extra-large shirt. Mr. Berrios wears pants with approximately a 35-inch waist and a 30-inch length. Mr. Berrios believed that the oversize uniform was meant to mockingly suggest that he was too small to be a man.

61.    Mr. Berrios asked Mr. Cobos for a uniform that fit him. Mr. Cobos said it would have to be ordered and did not provide that new uniform for approximately two months, during which time Mr. Berrios was forced to wear an obviously oversized uniform, which subjected him to additional ridicule.

62.    Mr. Smith commented, "It looks like a poncho," and Mr. Berrios overheard him say to Mr. Easom, while they were snickering about the uniform, "I don't see why this bitch doesn't just quit."

63.    Mr. Berrios felt that his co-workers and supervisor in fact wanted the severe and pervasive harassment and discrimination to force him to quit.

64.    Mr. Berrios requested more work hours from Mr. Easom, who had been put in charge of assigning extra hours at the April 1, 2015 orientation meeting. Mr. Easom told Mr. Berrios to ask Mr. Cobos.

65.    In May 2015, Mr. Berrios asked Mr. Cobos for extra hours. Mr. Berrios informed Mr. Cobos that he had been asking for extra hours and felt he was being skipped over because his co-workers disliked him because he is transgender. Although Mr. Berrios had informed Mr. Cobos about his humiliating and discriminatory treatment by co-workers just the prior month, Mr. Cobos responded as if he didn't know what Mr. Berrios was talking about. Given Mr. Cobos's own treatment of Mr. Berrios and his disregard for Mr. Berrios's complaints, reporting discrimination began to appear futile to Mr. Berrios.

66.    Mr. Cobos told him that he needed to speak with Mr. Easom about the extra hours, sending him back where he started.

67.    Mr. Berrios almost never received extra hours, which were given to new hires with less seniority and to co-workers who had already been assigned extra hours. When Defendant assumed the cleaning contract, Mr. Berrios was second in seniority for the morning shift behind Mr. Easom. After Defendant took over, the seniority list was re-structured with Mr. Berrios at the bottom. Both Mr. Easom and Mr. Cobos informed Mr. Berrios that his seniority had been lowered.

68.     Defendant permitted other employees to informally exchange shifts with one another to accommodate their need for time off, but Mr. Berrios was not able to do this because all of his co-workers were hostile and uncooperative with him.

69.     Mr. Cobos required Mr. Berrios to call the corporate office and notify them if he was going to be absent. To Mr. Berrios' knowledge, no other employees were required to do this. His co-workers informed Mr. Cobos or one another when they were going to be absent.

70.     Mr. Cobos admonished Mr. Berrios and told him that it was mandatory for employees to have on their uniforms when they clocked in and while they were on duty, but other employees regularly disregarded these rules without apparent consequence.

<u>The severe and pervasive discrimination was spread by Defendant's employees<br>to others in the building.</u>

71.     Mr. Berrios's co-workers continued to regularly make derogatory and discriminatory comments based on his gender, to call him by his dead name, and to mis-gender him.

72.     Because of the unchecked harassment he received when he tried to enter either the men's or women's bathroom, Mr. Berrios continue to urinate in a bucket in the women's locker room and went to Starbucks to have a bowel movement.

73.     Mr. Berrios did not receive extra hours and was held to different standards than other employees.

74.     Mr. Berrios regularly told Mr. Cobos about things that his co-workers had said and done but Mr. Cobos appeared annoyed and told Mr. Berrios to stop calling him. He stopped answering Mr. Berrios's calls. Mr. Berrios felt that Mr. Cobos was deliberately provocative to get a reaction from him.

75.     Further aggravating the abusive and hostile work environment, co-workers frequently "outed" Mr. Berrios to Verizon workers by saying things like, "She'll help you."

76.     Upon information and belief, Mr. Smith and/or Mr. Easom informed security guards at the Verizon building that he is transgender. The guards laughed and snickered, both with or without Mr. Easom and Mr. Smith, when Mr. Berrios was present. Two of the security guards said discriminatory things to Mr. Berrios, such as, "Do you really feel comfortable dressing like a man?" and, "Women look funny in men's clothes."  One of those security guards gave Mr. Berrios religious pamphlets and preached to him, saying things such as, "God does not accept your lifestyle."

77.     Mr. Berrios informed Mr. Cobos of his treatment by the security guards. To his knowledge, Defendant did nothing to address the problem.

78.     Mr. Berrios witnessed Mr. Smith tell a mentally ill homeless man who was frequently in front of the Verizon building that Mr. Berrios was transgender. The homeless man confronted Mr. Berrios and cried loudly something to the effect of, "Homosexuality is an abomination. God doesn't accept homos into heaven.  All you need is to be penetrated by a man and you will be saved, you will change and become the beautiful woman that god created." The man then yelled similar things every time he saw Mr. Berrios, regardless of who was present, subjecting Mr. Berrios to public humiliation.

79.     The harassment and abuse culminated on August 21, 2015, when Mr. Berrios was physically assaulted by five men when he was cleaning the men's bathroom. He recognized three of them as Verizon employees. While they were attacking him, they shouted things such as "There's a reason that I'm a man and you're not!" and "Fucking tranny!" Mr. Berrios believed

12

that one of his co-workers may have disclosed where he was working at that time. The attackers severely injured Mr. Berrios's ankle and hit him on the head.

80.     Mr. Berrios was afraid to tell anyone what happened, including Defendant. He initially told everyone that he slipped on water, but later admitted to his doctors what had happened. Mr. Berrios was afraid to ever re-enter to the building.

81.     Mr. Berrios subsequently received Workers' Compensation benefits due to the injury that he sustained. When his benefits ended, he did not return to Defendant's employment.

<u>Defendant brought retaliatory disciplinary action against Plaintiff and<br>continued to discriminate against him.</u>

82.     On May 21, 2015, Mr. Berrios filed his initial complaint with the EEOC.

83.     Prior to filing his complaint with the EEOC, Mr. Berrios had a strong employment record. He had worked for Global Industries since 2011 and, despite the discrimination he experienced, he had never received a written warning or disciplinary report of any kind.

84.     On June 10, 2015, Defendant issued the first of three Employee Disciplinary Report against Mr. Berrios.

85.     Mr. Cobos personally hand-delivered the Disciplinary Report to Mr. Berrios. Upon information and belief, given that Mr. Cobos worked at a different site, this was not common practice. Mr. Cobos told Mr. Berrios "I came just for you."

86.     Mr. Cobos told Mr. Berrios that his doctor's notes were insufficient and questioned why he needed to see a doctor so frequently.

87.     On August 10, 2015, Mr. Berrios met with Mr. Martinez, Mr. Cobos, Mr. Easom, and Pedro Cardi, Jr. Mr. Berrios's union representative. Although this meeting was scheduled to

discuss grievances filed by Mr. Berrios, Defendant took the opportunity to admonish Mr. Berrios about his work performance.

88.     Mr. Martinez blamed Mr. Berrios for creating a dysfunctional workplace and said that his co-workers disliked his "negative reactions." Mr. Martinez told Mr. Berrios to show more respect for his colleagues and stop acting inappropriately.

89.     Mr. Martinez accused Mr. Berrios of having "violent tendencies."

90.     In the course of this meeting, Mr. Berrios stated that he had never received a copy of the contract. Mr. Martinez replied that it was not credible that Mr. Berrios was the only person who was not given a contract. Mr. Berrios responded that the entire point of his grievances was that he was experiencing discrimination and being treated differently than everyone else. Mr. Martinez replied something to the effect of, "not my problem."

91.     Mr. Berrios believed that Mr. Martinez, who had raised his voice, was being deliberately provocative in order to get him to react. Mr. Berrios merely left.

92.     On August 12, 2015, Defendant issued a second Employee Disciplinary Report. Again Mr. Cobos hand-delivered the Disciplinary Report.

93.     Mr. Berrios refused to sign the document without his union representative being present. Mr. Cobos later returned with Lino Skreli, a Project Manager employed by Defendant, and again asked Mr. Berrios to sign the warning. After Mr. Berrios again refused, he overheard Mr. Cobos say to Mr. Skreli, "I told you that bitch is really a prick."

94.     On August 13, 2015, Defendant issued a third Employee Disciplinary Report for "failure to follow instructions" on July 13, 2015.

95.     On August 21, 2015, Mr. Berrios was physically assaulted and seriously injured by five men in the men's bathroom. He never returned to the building or to active employment by Defendant.

### FIRST CAUSE OF ACTION

### Gender-Based Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

96.     Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

97.     Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

98.     Defendant treated Plaintiff differently from his co-workers because he is a transgender man and/or because he did not conform to Defendant's gender-based preferences, expectations, or stereotypes. Defendant engaged in unlawful employment practices against Plaintiff because of his gender, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1).

99.     This different treatment included assigning Plaintiff fewer work hours, requiring him to follow different rules than his co-workers, providing him with a woman's uniform, telling

him to change his appearance, failing to provide him access to a safe bathroom, speaking to him in a derogatory manner, failing to respond to his complaints or to directly communicate with him, and pursuing disciplinary action that they knew or should have known was related to the discriminatory behavior.

100.    The effect of Defendant's unlawful employment practices was to deprive Mr. Berrios of equal employment opportunities and otherwise adversely affect his status as an employee, based on Defendant's gender-based preferences, expectations, or stereotypes.

101.    Plaintiff's gender was the determining factor and/or a motivating factor in Defendant's actions.

102.    Defendant's unlawful employment practices were intentional and done with malice or with reckless indifference to Mr. Berrios's rights under Title VII.

103.    As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendant's actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

104.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

### SECOND CAUSE OF ACTION

### Gender-Based Discrimination in Violation of<br>Title VII of the Civil Rights Act of 1964,<br>42 U.S.C. § 2000e *et seq.*<br>Hostile Work Environment

105.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

106.   Mr. Berrios was subjected to severe and pervasive discrimination and harassment by Defendant's agents and employees, including Mr. Cobos, Mr. Martinez, Mr. Easom, Mr. Smith, and Ms. Crandel, because of his gender. That conduct was not welcomed by Plaintiff.

107.   From April 1, 2015, the very first day that Defendant took control of the cleaning crews at Verizon, Defendant was aware of the habitual discriminatory treatment perpetrated by their new employees against Mr. Berrios. Mr. Berrios informed them of the harassment and requested that Mr. Cobos and Mr. Martinez end the discriminatory behavior. Neither Mr. Cobos nor Mr. Martinez did anything to curtail or prevent the severe and pervasive discrimination. Instead, they themselves also engaged in discriminatory behavior toward Mr. Berrios.

108.   Plaintiff's work conditions consistently included being called cruel and discriminatory names, being addressed by the wrong pronouns and name, being the subject of gossip and derision, being prevented from using a bathroom, being forced to wear oversize clothes that drew attention to his gender and subjected him to ridicule, being denied extra work shifts, and being required to follow different rules than his co-workers.

109.   Plaintiff's co-workers were so hostile to Mr. Berrios's gender that they extended the scope of the harassment by informing employees of other companies in the building that Mr. Berrios is transgender. Defendant's agents were aware of harassment by security guards and, upon information and belief, did nothing to prevent Mr. Berrios from being harassed in his workplace.

110.   Plaintiff believed his work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

111.   The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment to be hostile or abusive.

17

112.    Management level employees knew, or should have known, of the abusive and harassing conduct. Plaintiff provided management level employees, including Mr. Cobos and Mr. Martinez, with information sufficient to raise a probability of gender harassment in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

113.    Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of gender, and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

114.    As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

115.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on his gender.

### THIRD CAUSE OF ACTION

**Violations of Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e *et seq.*
Retaliation**

116.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

117.    Section 704(a) of Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

118.   Plaintiff repeatedly made informal complaints to Defendant's agents and employees opposing Defendant's unlawful, discriminatory employment practices based on gender. Plaintiff also filed a complaint with the EEOC

119.   As a result of Plaintiff's complaints, Defendant's agents took materially adverse actions against Plaintiff, including, but not limited to, treating Plaintiff differently than other staff; issuing disciplinary warnings; threatening termination; and reprimanding Plaintiff.

120.   Defendant's adverse actions constituted retaliatory workplace harassment. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

121.   As a direct, legal and proximate result of Defendant's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

### Gender-Based Disparate Treatment in Violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq*.

122.   Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

123.   New York State Human Rights Law makes it unlawful for an employer "because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296 (1).

124.    Defendant treated Plaintiff, a transgender man, differently from his co-workers, because of his gender. Plaintiff was assigned fewer work hours, required to follow different rules than his co-workers, provided with a woman's uniform, told him to change his appearance, denied access to a safe bathroom, spoken to in a derogatory manner. Defendant ignored his complaints and pursued disciplinary action that Defendant knew or should have known was related to the discriminatory behavior.

125.    The effect of Defendant's unlawful employment practices was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee.

126.    As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION

**Gender-Based Discrimination in Violation of
New York State Human Rights Law ("NYSHRL"),
N.Y. Exec. Law §§ 296 *et seq*.
Hostile Work Environment**

127.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

128.    Plaintiff was subjected to severe and pervasive discrimination and harassment by Defendant's agents and employees because of his gender. That conduct was not welcomed by Plaintiff.

129.    Beginning April 1, 2015, Defendant was aware of the habitual discriminatory treatment perpetrated by their new employees against Plaintiff. Defendant's agents did nothing to end the severe and pervasive discrimination.

130.    Plaintiff's work conditions consistently included being called cruel and discriminatory names, being addressed by the wrong pronouns and name, being the subject of gossip and derision, being prevented from using a bathroom, being forced to wear oversize clothes that drew attention to his gender and subjected him to ridicule, being denied extra work shifts, and being required to follow different rules than his co-workers.

131.    Plaintiff's co-workers were so hostile to Mr. Berrios's gender that they extended the scope of the harassment by informing employees of other companies in the building that Mr. Berrios is transgender. Defendant's agents were aware of harassment by security guards and, upon information and belief, did nothing to prevent Mr. Berrios from being harassed in his workplace.

132.    As a result of the conduct of Defendant's agents and employees, Plaintiff believed his work environment to be hostile or abusive.

133.    The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment to be hostile or abusive.

134.    Management level employees knew, or should have known, of the abusive and harassing conduct. Plaintiff provided management level employees with information sufficient to raise a probability of gender harassment in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

135.    Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of gender, and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

136.    As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**Gender-Based Violations of the
New York State Human Rights Law ("NYSHRL"),
N.Y. Exec. Law §§ 296 *et seq.*
Retaliation**

137.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

138.    NYSHRL makes it an unlawful discriminatory practice for "any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law §§ 296(7).

139.    Plaintiff repeatedly made informal complaints to Defendant's agents and employees, and filed a complaint with the EEOC, opposing Defendant's unlawful, discriminatory employment practices based on gender.

140.    As a result of Plaintiff's complaints, Defendant's agents took materially adverse actions against Plaintiff, including, but not limited to, treating Plaintiff differently than other staff; issuing disciplinary warnings; threatening termination; and reprimanding Plaintiff.

141.    As a direct, legal and proximate result of Defendant's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**Gender-Based Disparate Treatment in Violation of the**
**New York City Human Rights Law ("NYCHRL"),**
**N.Y.C. Admin. Code § 8-101 *et seq.***

142.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

143.    The NYCHRL prohibits employers, and any agent or employee thereof, from discriminating against any person or in terms, conditions, or privileges of employment because of that person's actual or perceived gender. N.Y. Admin. Code § 8-107(1)(a)(3).

144.    Defendant and agents of the Defendant discriminated against Plaintiff by treating him differently from his co-workers, who are not transgender. This included assigning him fewer work hours, requiring him to follow different rules than his co-workers, providing him with a woman's uniform and then an outsize uniform, telling him to change his appearance, failing to provide him safe access to a bathroom, speaking to him in a derogatory manner, failing to respond to his complaints or to communicate with him, and pursuing disciplinary action that they knew or should have known was related to the discriminatory behavior.

145.    The effect of Defendant's unlawful employment practices was to reduce the terms, conditions, and/or privileges experienced in the workplace, and to otherwise adversely affect Plaintiff's status as an employee, because of Defendant's gender-based preferences, expectations, or stereotypes.

146.    Plaintiff's gender was the determining factor and/or a motivating factor in Defendant's actions.

147.    As a direct, legal and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendant's actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven

at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive,

declaratory, and monetary relief available for discrimination at trial.

### EIGHTH CAUSE OF ACTION

#### Gender-Based Discrimination (Hostile Work Environment) in Violation of New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

148.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

149.    The New York City Commission on Human Rights' interpretation of the NYCHRL defines gender discrimination to includes an employer "allowing a [ . . . ] employee to be subjected to a hostile work environment because of their gender identity constitutes discrimination on the basis of gender." *See* New York City Commission on Human Rights Legal Enforcement Guidance on the Basis of Gender Identity or Expression: Local Law No. 3 (2002) at III.

150.    Defendant's agents and employees consistently treated Plaintiff less well than other employees because of his gender.

151.    Among other things, Defendant's agents and employees consistently called Plaintiff cruel and discriminatory names, addressed him by the incorrect pronouns and name, gossiped and demeaned him, made him afraid to use a bathroom, forced him to wear oversize clothes that drew attention to his gender and subjected him to ridicule, denied him extra work shifts, and required him to follow different rules than his co-workers.

152.    Plaintiff's co-workers were so hostile to Mr. Berrios's gender that they expanded the scope of the harassment to include employees of other companies in the building by telling them that Mr. Berrios is transgender. Defendant's agents were aware of harassment by security

guards and upon information and belief did not contact their employer to attempt prevent Mr. Berrios from being harassed in his workplace.

153.    Management level employees knew, or should have known, of the abusive and harassing conduct. Plaintiff provided management level employees, including Mr. Cobos and Mr. Martinez, with information sufficient to raise a probability of gender harassment in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

154.    Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of gender, and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

155.    As a direct, legal, and proximate result of the discrimination, Plaintiff sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

156.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on his gender.

**NINTH CAUSE OF ACTION**

**<u>Gender-Based Violations of the</u>**
**<u>New York City Human Rights Law ("NYCHRL"),</u>**
**<u>N.Y.C. Admin. Code § 8-101 et seq.</u>**
**<u>Retaliation</u>**

157.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

158.    It is unlawful discriminatory practice for an employer to "retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden by [the NYCHRL]." N.Y.C. Admin. Code § 8-107(7)(i).

159.    Defendant retaliated against Plaintiff for complaining about the discriminatory actions he experienced.

160.    Plaintiff repeatedly made informal complaints to Defendant's agents and employees opposing Defendant's unlawful, discriminatory employment practices based on gender.

161.    As a result of Plaintiff's complaints, Defendant's agents and employees took materially adverse actions against Plaintiff, including, but not limited to, treating Plaintiff differently than other staff; issuing disciplinary warnings; threatening termination; and singling him out for reprimands.

162.    As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.    For a declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;

2.    For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

3.    For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4.      For punitive damages in an amount to be determined at trial;

5.      For an order enjoining Defendant from engaging in the unlawful acts complained

of herein;

6.      For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-

5(k), N.Y.C. Admin. Code § 8-502(f), and other laws; and

7.      For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial on the merits by jury pursuant to Fed.R.Civ.P. 38.


Dated: Brooklyn, New York
        August 4, 2021                        BROOKLYN LEGAL SERVICES


                                              By:  s/ Catherine F. Bowman
                                                    Catherine F. Bowman (CFB 3937)


                                              Attorneys for Plaintiff
                                              105 Court Street, 4th floor
                                              Brooklyn, NY 11201
                                              718-237-5571
                                              cbowman@lsnyc.org